CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: ~~01~~ 14-3622   DIVISION "*A*"   SECTION NO: *15*

WALTER H. ROSS, SR. AND HELEN J. ROSS

**VERSUS**

**REILLY-BENTON, INC., EAGLE INC., MCCARTY CORPORATION, TAYLOR-SEIDENBACH, INC.,OWENS-ILLINOIS, INC., FOSTER WHEELER CORP., RUST ENGINEERING, ENTERGY NEW ORLEANS, INC, SUCCESSOR TO NEW ORLEANS PUBLIC SERVICE, INC., HUNTINGTON INGALLS, INC., CBS CORPORATION, GENERAL ELECTRIC COMPANY, HESS CORPORATION, ONE BEACON AMERICA INSURANCE COMPANY, RUST ENGINEERING COMPANY, 3-M COMPANY, NATIONAL SERVICE INDUSTRIES, INC., INGERSOLL-RAND, FLUOR CORPORATION, MISSISSIPPI POWER COMPANY, FMC CORPORATION (individually and as successor in interest to PEERLESS PUMPS), AND THE ROYAL INSURANCE COMPANY**

FILED: _____    _____
                                                                DEPUTY CLERK


## PETITION FOR DAMAGES

NOW INTO COURT, by and through undersigned counsel, comes petitioner **WALTER H. ROSS, SR.** hereinafter referred to as "Petitioner," a resident of Bay Saint Louis, Hancock County, State of Mississippi, who for a cause of action respectfully represents the following:

1.

Made Defendant, **REILLY-BENTON, INC.,** (hereinafter **"Supplier Defendant"),** is a Louisiana based corporation licensed to do business and/or is doing business in the State of Louisiana.

2.

Made Defendant, **EAGLE, INC.** (formerly Eagle Asbestos and Packing Company), (hereinafter **"Supplier Defendant"),** is a Louisiana based corporation licensed to do business and/or is doing business in the State of Louisiana.

3.

Made Defendant, **MCCARTY CORPORATION,** (hereinafter **"Supplier Defendant"),** is a Louisiana based corporation licensed to do business and/or is doing business in the State of Louisiana.



EXHIBIT
A

4.

Made Defendant, **TAYLOR-SEIDENBACH, INC.**, (hereinafter **"Supplier Defendant")**, is a Louisiana based corporation licensed to do business and/or is doing business in the State of Louisiana.

5.

Made Defendant, **HUNTINGTON INGALLS, INC.**, (hereinafter "Ingalls" and/or "Premises Defendant"), is a foreign corporation licensed to do business and is doing business in the State of Louisiana.

6.

Made Defendant, **OWENS-ILLINOIS, INC.**, (hereinafter **"Asbestos Manufacturer Defendant")**, is a foreign corporation licensed to do business and/or is doing business in the State of Louisiana.

7.

Made Defendant, **FOSTER WHEELER, LLC**, (hereinafter **"Boiler Defendant")**, is a foreign corporation licensed to do business and/or is doing business in the State of Louisiana.

8.

Made Defendant, **ENTERGY NEW ORLEANS, INC., SUCCESSOR TO NEW ORLEANS PUBLIC SERVICE, INC.**, (hereinafter **"Premises Defendant")**, is a domestic corporation licensed to do business and/or doing business in the State of Louisiana.

9.

Made Defendant, **CBS CORPORATION**, (hereinafter **"Manufacturer Defendant")** is a foreign corporation licensed to do and doing business in the State of Louisiana.

10.

Made Defendant, **GENERAL ELECTRIC COMPANY**,  (hereinafter **"Manufacturer Defendant")** is a foreign corporation licensed to do and doing business in the State of Louisiana

11.

Made Defendant, **HESS CORPORATION**, (hereinafter **"Premises Defendant")** is a foreign corporation licensed to do and doing business in the State of Louisiana.

12.

Made Defendant, **ONE BEACON AMERICA INSURANCE COMPANY**, is a foreign corporation licensed to do and doing business in the State of Louisiana and was at all pertinent times an insurance provider for Eagle, Inc. and is liable to Petitioner pursuant to the Louisiana Direct Action Statute.

13.

Made Defendant, **RUST ENGINEERING COMPANY**, is a foreign corporation licensed to do and doing business in the State of Louisiana.

14.

Made Defendant, **3-M COMPANY**, is a foreign corporation licensed to do and doing business in the State of Louisiana.

15.

Made Defendant, **NATIONAL SERVICE INDUSTRIES, INC, (individually and as successor in interest to North Brothers, Inc.)** is a foreign corporation licensed to do and doing business in the State of Louisiana

16.

Made Defendant, **LOUISIANA INSURANCE GUARANTY ASSOCIATION** is a corporation licensed to do and doing business in the State of Louisiana was at all pertinent times an insurance provider for Gabler Insulations, Inc. and its executive officers and is liable to Petitioner pursuant to the Louisiana Direct Action Statute.

17.

Made Defendant, **INGERSOLL-RAND**, (hereinafter **"Manufacturer Defendant"**) is a foreign corporation licensed to do and doing business in the State of Louisiana

18.

Made Defendant, **FLUOR CORPORATION**, is a foreign corporation licensed to do and doing business in the State of Louisiana.

19.

Made Defendant, **MISSISSIPPI POWER COMPANY**, (a subsidiary of Southern Company, LLC) (hereinafter " **Premises Defendant"**) is a foreign corporation that may be served pursuant to the Louisiana Long Arm Statute.

20.

Made Defendant, **FMC CORPORATION, (individually and as successor-in-interest to Peerless Pump Company),** (hereinafter **"Manufacturer Defendant"**) is a foreign corporation licensed to do and doing business in the State of Louisiana.

21.

Made Defendant, **THE ROYAL INSURANCE COMPANY,** is a foreign corporation licensed to do and doing business in the State of Louisiana was at all pertinent times an insurance provider for The Aber, Co. and its executive officers and is liable to Petitioner pursuant to the Louisiana Direct Action Statute.

22.

Many of the aforesaid Defendants listed are nonresident corporations in Louisiana. However, at all times material, were doing business in Louisiana, made contracts with residents of this state, committed torts in this state against residents of this state, from which acts this suit arises, and such acts subject these defendants to service of process pursuant to the Louisiana long-arm statute.

## VENUE

23.

This Court has jurisdiction and venue because torts occurred within this parish. Further, defendants Entergy New Orleans, Inc. and Taylor-Seidenbach, Inc. are corporations whose principal place of business is in Orleans Parish, State of Louisiana . Further, Plaintiff sustained tortious exposures to asbestos in Orleans Parish at the Michoud Assembly Facility and Entergy's Michoud Power Plant.

## FACTS

24.

Petitioner, Walter H. Ross, Sr. became an insulator apprentice/helper in 1954 after joining the International Associate of Heat and Frost Insulators and Asbestos Workers Union, Local 55.

25.

Petitioner, **Walter H. Ross, Sr.,** began working as an insulator's helper/apprentice for Shook and Fletcher Insulation at Ingalls Shipyard in Pascagoula, MS from October 1954 through May 1955 and again in 1957.  During this work, Mr. Ross mixed asbestos containing insulating cement on a daily basis and worked around others using, tearing, sawing and cutting asbestos containing insulation and asbestos cloth.  In 1957, Mr. Ross worked as an insulator at Ingalls cutting, sawing and tearing asbestos-containing insulation. The process of mixing the asbestos containing insulating cement, cutting, sawing and tearing the asbestos containing insulation released dust.  Mr. Ross breathed this dust in without the benefit of respiratory protection.

26.

From 1955 to 1956, Petitioner was employed by North Brothers, Inc., as an apprentice/insulator's helper at Clifty Creek Powerplant in Madison, Indiana.  Mr. Ross worked assisting insulators with the insulation of piping leading to the boiler and the boiler walls.  The boiler was manufactured by the **Boiler Defendant.** Mr. Ross mixed asbestos containing insulating cement on a daily basis and worked around others using, tearing, sawing and cutting asbestos containing insulation and asbestos cloth.  The process of mixing the asbestos containing insulating cement, cutting, sawing and tearing the asbestos containing insulation released dust.  Mr. Ross breathed this dust in without the benefit of respiratory protection.

27.

In 1957, Mr. Ross was employed by Insulation Services, Inc. and worked at the Watson Powerhouse owned by Mississippi Power Company in Gulfport, Mississippi. During this employment, Mr. Ross worked as an insulator's helper. Mr. Ross worked assisting with the insulation of the unit 1 turbine. During this employment, Mr. Ross mixed asbestos containing insulating cement on a daily basis and worked around others using, tearing, sawing and cutting asbestos containing insulation and asbestos cloth.  The process of mixing the asbestos containing insulating cement, cutting, sawing and tearing the asbestos containing insulation released dust.  Mr. Ross breathed this dust in without the benefit of respiratory protection.

28.

In 1957, Mr. Ross was employed by The Gilmin Co. and later Fluor Corporation at the Hess Oil Refinery in Purvis, MS.  Mr. Ross worked as an insulator's helper.  During this

employment, Mr. Ross mixed asbestos containing insulating cement on a daily basis and worked around others using, tearing, sawing and cutting asbestos containing insulation and asbestos cloth. The process of mixing the asbestos containing insulating cement, cutting, sawing and tearing the asbestos containing insulation released dust. Mr. Ross breathed this dust in without the benefit of respiratory protection.

29.

In 1961, 1962 and 1963, Petitioner was employed by the Aber Company as an insulator. Plaintiff worked with and around various asbestos-containing materials including, but not limited to, pipe covering, boiler insulation, asbestos blocks, asbestos cloth, and cements. Mr. Ross mixed asbestos containing insulating cement on a daily basis and worked around others using, tearing, sawing and cutting asbestos containing insulation and asbestos cloth. The process of mixing the asbestos containing insulating cement, cutting, sawing and tearing the asbestos containing insulation released dust. Mr. Ross breathed this dust in without the benefit of respiratory protection.

30.

In 1963, Mr. Ross was employed by Gabler Insulations, Inc. at the NASA Michoud Assembly Facility in New Orleans, Louisiana. During this work, Mr. Ross was employed as an insulator. He removed old asbestos insulation by ripping it away from pipes and other machinery, including boilers, turbines, boiler walls and appurtenances, turbine walls and turbine appurtenances. He then insulated piping and equipment with asbestos containing piping insulation and block. Mr. Ross performed this work without the benefit of respiratory protection as this work released or caused to be released copious amounts of asbestos fibers.

31.

From November 1963 to 1975, Mr. Ross worked exclusively for Mason-Rust Engineering at the NASA Michoud Assembly Facility in New Orleans, Louisiana. Mr. Ross removed old asbestos insulation. He then cut, molded and replaced that insulation with new insulation. Mr. Ross worked on all piping systems including valves, pumps, heat exchangers and boilers which contained asbestos insulation. Mr. Ross worked in poorly ventilated areas where asbestos was falling from above.

32.

In the early 1960's while working at the Michoud Assembly Facility, the #3 boiler ruptured. The boiler was covered with Kaylo block insulation which was blown everywhere. Mr. Ross was

required to clean up the asbestos, re-insulate the boiler and put the steel blanket back on.

33.

During his vacation from the Michoud Assembly Facility in 1967, Mr. Ross worked at the Entergy Michoud Power Plant in New Orleans on all piping at the facility while employed by The McCarty Corporation.  His duties included installing and  maintaining all insulation on the piping systems being built at the power house including those leading to the boiler and the boiler walls.

34.

On a daily basis during this employment as an insulator Mr. Ross was substantially exposed to asbestos in the normal routine course of his work performing insulation installation, repair, renovation and general overhaul of insulation on heating systems, piping systems, and other heat carrying appurtenances, during which time he was exposed to asbestos fibers released from heat insulation, boiler insulation, insulation pads, boiler lagging, boiler jackets, and other asbestos insulation on the ventilation and piping systems.  Even when not using the dangerous materials himself, Petitioner was nevertheless substantially exposed to dangerous materials and especially the dust and fibers that were caused by the other workers in the areas where the Petitioner was working causing him to sustain a bystander exposure to asbestos.

35.

Throughout his career, Petitioner, Walter Ross, Sr., was exposed to asbestos fibers released from installation and removal of heat insulation, boiler insulation, insulation pads, boiler lagging, boiler jackets, and other asbestos insulation on the boilers, turbines and piping systems. These asbestos containing materials were manufactured by the **Manufacturer Defendants** and supplied by the **Supplier Defendants**.  When not working with asbestos-containing materials himself, Walter Ross, Sr. was nevertheless exposed to dangerous materials and especially the dust and fibers that were caused by the other workers in the areas where petitioner was working, causing him to sustain a substantial bystander exposure to asbestos. This exposure to asbestos caused Petitioner, Walter H. Ross, Sr., to develop pseudomesotheliomatous adenocarcinoma.

36.

Mr. Ross was not told about the hazards associated with asbestos until the early 1970's. Prior to this time, Petitioner was not informed that he should wear protective clothing and apparatuses when working with asbestos-containing products nor was he required to wear such equipment.

37.

On information and belief, the asbestos dust to which Mr. Ross was exposed in this way came from asbestos-containing materials supplied by the **Supplier Defendants** and was manufactured by the **Manufacturer Defendants**. This exposure to asbestos caused Petitioner, Walter H. Ross, Sr., to develop pseudomesotheliomatous adenocarcinoma.

38.

At all times pertinent, Defendant, **LOUISIANA INSURANCE GUARANTY ASSOCIATION,** provided insurance coverage to Gabler Insulations, Inc. for all risks and harm caused by them as contained herein and is liable to Petitioner pursuant to the Louisiana Direct Action Statute.

39.

At all times pertinent, Defendant, **THE ROYAL INSURANCE COMPANY** provided insurance coverage to The Aber Co. for all risks and harm caused by them as contained herein and is liable to Petitioner pursuant to the Louisiana Direct Action Statute.

40.

In or about January 2014, Petitioner **Walter H. Ross, Sr.** was diagnosed with pseudomesotheliomatous adenocarcinoma, a disease caused by his exposure to asbestos.

**LIABILITY OF SUPPLIER DEFENDANTS**

Petitioners allege and assert the following allegations:

41.

**Supplier Defendants**, each and individually, sold, distributed, and supplied asbestos and asbestos-containing product(s) which Petitioner came in contact with and utilized, and asbestos which Petitioner inhaled, causing his injury.

42.

That **Supplier Defendants** are liable to Petitioner as professional vendors of asbestos-containing products, and as such, because of the defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the asbestos products they sold, and negligently failed to warn the users of potential health hazards from the use of said products.

8

43.

That **Supplier Defendants**, each and individually, are liable to Petitioner because they knew or should have known that the asbestos products which they sold and supplied were unreasonably dangerous in normal use, and their failure to communicate said information rendered them negligent to Petitioner, and such negligence was the cause of Petitioner's injuries, including, but not limited to asbestosis, asbestos-induced pleural disease and other ill health effects.

44.

The defective condition of the products rendered them unreasonably dangerous and the asbestos-containing products were in this defective condition at the time they left the Defendants' hands.  Said products were unreasonably dangerous per se, unreasonably dangerous due to Defendants' failure to warn, and unreasonably dangerous due to a design defect.

45.

Defendants knew that these asbestos-containing products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation, installation, operation, maintenance and/or repair of the asbestos-containing products.

46.

Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for purposes of manipulation and/or installation.

47.

Plaintiff was exposed to the Defendants' asbestos-containing products while using them in a manner to which it was intended and/or reasonably foreseeable by Defendants.

48.

Specifically, Defendant, **McCarty Corporation,** re-labeled the asbestos and asbestos-containing products that it supplied, affixing to it their own brand name, and shipped the same to Petitioner employers.

## **LIABILITY OF BOILER DEFENDANTS**

Petitioners re-allege and re-assert all previous allegations and further state that:

49.

**Boiler Defendants**, produced, manufactured and sold products including "marine boilers"

9

and land-based boilers which contained, as a component, asbestos-containing insulation.

50.

That the **Boiler Defendants** are liable for Petitioner's injuries in the following particulars:

1.   Unreasonably Dangerous <u>Per Se</u>

That the **Boiler Defendants** produced a product that was used by
Petitioner, namely, a boiler, that has as its component part asbestos-
containing insulation which is unreasonably dangerous <u>per se</u>;

2.   Failure to Warn

That the **Boiler Defendants** produced a product which component
part is asbestos insulation, and failed to place adequate warnings on
the product to advise foreseeable users against the dangers of
exposure to a component part, namely asbestos insulation, and
further failed to design in such a manner as to minimize said
exposures to asbestos;

3.   Strict Products Liability, Unreasonably Dangerous Due to Defective Design

That the **Boiler Defendants** produced a product, which component
part is asbestos insulation, and designed its boiler in such a manner
that it failed to incorporate warnings, and further failed to design in
such a manner as to minimize said exposures to asbestos.

51.

The strict liability of the **Boiler Defendants** directly caused the injuries complained

herein.

## LIABILITY OF MANUFACTURING DEFENDANTS

Petitioners re-allege and re-assert all previous allegations and further state that:

52.

**Manufacturer Defendants** during all the times mentioned herein and for a long time prior

thereto, have been, and some are now, engaged in the business of manufacturing, installing, selling,

marketing, distributing, and otherwise placing into the stream of commerce insulation materials

containing asbestos, products and/or machinery requiring or calling for the use of asbestos or

asbestos-containing products. Each defendant or corporation or its predecessor-in-interest is, or at

times material hereto, has been engaged in the mining, processing, manufacturing, sale and

distribution of asbestos or asbestos-containing products and machinery requiring or calling for the use

of asbestos and asbestos-containing products.   Petitioner would show that he has been exposed, on

10

numerous occasions, to asbestos-containing products and machinery requiring or calling fo rthe use of asbestos or asbestos-containing products produced and sold by the Asbestos Manufacturer Defendants and, in so doing, has inhaled great quantities of asbestos fibers. Further, Petitioner alleges as more specifically set out below, the petitioner has suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by the Manufacturer Defendants. Each exposure to such products caused or contributed to Petitioner's injuries.

53.

Said products were expected to and did, in fact, reach the ultimate users and consumers in substantially the same condition in which they were sold.

54.

These asbestos products of the **Manufacturer Defendants** were defective and unreasonably dangerous in their design and marketing, which was a producing cause of the injuries and damages claimed herein.

55.

## BREACH OF IMPLIED AND EXPRESSED WARRANTIES

Petitioners re-allege and re-assert all previous allegations and further state that:

Petitioner alleges that the **Asbestos Manufacturer Defendants,** and each of them, negligently breached their warranties to him in the following respects:

a)   That the **Manufacturer Defendants** knew or in the exercise of reasonable care ought to have known that their products were defective, and that such product was not suitable for the purposes for which it was intended;

b)   That the **Manufacturer Defendants** knew and should have tested their products, especially those containing asbestos, to ascertain the safe or dangerous nature of such products before offering them for sale, or in the alternative, should have removed such products from the market upon ascertaining that such products would cause asbestosis, lung cancer, and mesothelioma;

c)   That the **Manufacturer Defendants** should have devised a method of application for their products, especially those containing asbestos, that would have kept those using such products from contracting lung cancer, asbestosis or mesothelioma if the **Manufacturer Defendants** would not remove such products from sales to the public; and

d)   That the products of the **Manufacturer Defendants,** especially those containing asbestos, were warranted, either expressly or impliedly, to be merchantable, when in truth they were not, and therefore, the **Manufacturer Defendants** breached to the

11

Petitioner, as well as to others, the warranty of merchantability.

56.

The **Manufacturer Defendants'** breach of implied and expressed warranties resulted directly in and caused or contributed to Petitioner's injury and the damages to Petitioner as set forth below.

57.

Petitioner alleges that the **Manufacturer Defendants**, and each of them, are strictly liable and/or are negligent in their failure to warn in the following respects:

1. **Negligent Failure to Warn**

   That the **Manufacturer Defendants** knew or in the exercise of ordinary or reasonable care ought to have known that the asbestos containing products and/or products that required or anticipated the use of asbestos and/or asbestos-containing products they manufactured and distributed was deleterious, poisonous, and highly harmful to Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, **Manufacturer Defendants** negligently failed to take any reasonable precautions or exercise reasonable care to warn the Petitioner of the danger and harm to which he was exposed while handling the **Manufacturer Defendants'** products; and

   That the **Manufacturer Defendants** knew or in the exercise of ordinary care ought to have known that their product was deleterious, poisonous, and highly harmful to the Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, **Manufacturer Defendants** failed and omitted to provide the Petitioner with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect them from being poisoned and disabled as they were by exposure to such deleterious and harmful compound substances and other material contained in said **Asbestos Manufacturer Defendants'** products.

2. **Strict Products Liability, Unreasonably Dangerous Due to Defective Design**

   That the **Manufacturer Defendants** packaged asbestos-containing insulation in such a manner that in the ordinary handling of the packaging, Petitioner came in contact with such deleterious, poisonous and highly harmful compound substances and other material contained in said Asbestos Manufacturer Defendants' insulation;

   That the **Manufacturer Defendants** failed to design their packaging and product in such a manner so as to advise and warn foreseeable users, including the Petitioner, by placing warnings on their containers of said insulation and/or on the actual insulation, to advise the handlers, other users and bystanders of the dangers of exposure with said insulation; and

12

3.     **Unreasonably Dangerous <u>Per</u> <u>Se</u>**

That **Manufacturer Defendants'** products are unreasonably dangerous <u>per se.</u>

58.

**Manufacturer Defendants'** negligent failure to warn caused their products to be
unreasonably dangerous.

59.

Exposure to **Manufacturer Defendants'** unreasonably dangerous products substantially
caused the injuries complained of herein.

60.

Petitioner was employed as an insulator and was exposed to asbestos directly and as a
bystander, and/or because it was necessary for him to work in, near and with **Manufacturer
Defendants'** products in the normal course and scope of his occupation.

61.

Petitioner's exposure to the   **Manufacturer Defendants'** products and to the respirable
asbestos dust that these asbestos-containing products produced was a reasonably anticipated and
foreseeable event.

62.

As a result of the above referenced conduct of the **Manufacturer Defendants,** and each of
them as aforesaid, including but not limited to their installation, marketing, sales and/or distribution
of unreasonably dangerous products <u>per se</u>, their failure to adequately label and warn, their failure to
properly research, test and/or design, said exposure to said asbestos has caused injuries to **Mr. Ross,**
including, but not limited to, cancer.


<u>**LIABILITY OF CONTRACTOR DEFENDANTS**</u>

Petitioner re-alleges and re-asserts all previous allegations and further states:

63.

The Contractor Defendants contracted at jobsites identified herein to perform work prior to
and/or during the period Plaintiff was exposed to asbestos at the aforementioned jobsites.

64.

13

The Contractor Defendants and/or their subcontractors applied, displaced, demolished, disturbed, tore, ripped, cut, fabricated, installed, purchased, removed, repaired and used asbestos-containing products at, on and/or for the locations Petitioner worked.

65.

These activities resulted in the release of substantial quantities of asbestos dust into the work environment.

66.

Plaintiff was exposed to and inhaled substantial quantities of asbestos dust as a direct and proximate result of the activities of the Contractor Defendants and their subcontractors.

67.

The Contractor Defendants negligently performed and/or permitted their subcontractors to negligently perform the foregoing activities in the following non-exclusive particulars:

a)   By creating a work environment laden with asbestos dust and an unhealthy and unsafe place for Petitioner to work;

b)   By failing to provide warnings, or adequate warnings, to Plaintiff of the dangers and risks posed by the asbestos in the atmosphere in which Plaintiff worked; of the need for correct, adequate, and/or appropriate safety equipment; of critical medical and safety information regarding asbestos hazards in general and of hazard at the jobsites in particular; and of the hazards created by the Contractor Defendants' activities;

c)   By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly asbestos;

d)   By failing to apprise Plaintiff of the need for periodic medical examinations as a result of Plaintiff's exposure to asbestos created by Defendants' activities;

e)   By failing to ventilate and/or properly ventilate the areas in which Petitioner performed activities, or otherwise provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

f)   By failing to clean up and/or properly clean up the asbestos dust created by Petitioner's work;

g)   By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as Plaintiff, who came into

14

contact with asbestos dust as a result of Plaintiff's activities;

h) By concealing from Plaintiff and negligently failing to provide critical medical and safety information to Plaintiff regarding the safety and health risks associated with the asbestos and asbestos-containing products;

i) By failing to adopt and/or failing to enforce safety rules after such rules were actually adopted;

j) By failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, occupational exposure to asbestos;

k) By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

l) By fialing to supervise their operations and the operations of their subcontractors;

m) By commencing and continuing operations, which were under their control and supervision when they knew or should have known that such operations would cause Plaintiff and co-employees to be exposed to asbestos, without protection, on a daily basis;

n) By failing to timely, adequately and safely remove asbestos hazards from the workplace;

o) By failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety and Health Act);

p) By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Defendants knew, or in the exercise of reasonable diligence should have known, were unreasonably dangerous, or unreasonably dangerous per se;

q) By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with the their activities;

r) By Failing to test or adequately test the materials with which they were working to determine the presence of asbestos;

s) By failing to purchase products and materials that did not contain asbestos;

15

t)   By purchasing, using, applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that contained asbestos;

u)   By failing to properly label products that they purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and tore out as containing asbestos; and

v)   By conducting their activities through such other negligent acts or omissions, as may be revealed in discovery and/or proven at trial

68.

The negligent acts outlined above were a substantial contributing factor in Plaintiff's exposure to dangerous and hazardous levels of asbestos, and resultant damages.

69.

The foregoing negligent acts of the Contractor Defendants were a cause-in-fact and proximate cause of the Plaintiff's injuries and damages.

70.

Additionally, the Contractor Defendants are liable for the acts of their subcontractors under the doctrine of *respondeat superior* and Louisiana Civil Code article 2320.

71.

Additionally and alternatively, the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants were in the care, custody and control of the Contractor Defendants, Jointly with the premise defendants, were unreasonably dangerous due to the presence of asbestos, and were a proximate cause and cause-in-fact of the Plaintiff's injuries. Therefore, the Contractor Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

72.

Additionally, when such contractors did not employ, Plaintiff, Plaintiff was exposed to the asbestos containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants that were in the care, custody and control of the Contractor Defendants and were unreasonably dangerous due

16

to the presence of asbestos.

### NEGLIGENCE AND STRICT LIABILITY OF PLAINTIFF'S EMPLOYERS

(This section applies to Rust Engineering Company, Louisiana Insurance Guaranty Association, as the insurer for Gabler Insulations, Inc., National Service Industries, Inc., Fluor Corporation, The Royal Insurance Company, as the insurer of The Aber Co. and the McCarty Corporation. )

Petitioner re-alleges and re-asserts all previous allegations and further states:

73.

Plaintiff alleges negligent conduct and misconduct on behalf of Plaintiff's employers in failing to provide and/or ensure a safe workplace for their employees, free of hazardous concentrations of asbestos and asbestos-containing dust.

74.

At various times, Plaintiff was employed by the Employer Defendants and during such time was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by Defendants.

75.

The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest undertook and assumed the duties and responsibilities owed individually for providing Plaintiff with a safe place to work and Defendants negligently failed to provide Plaintiff a safe place to work.

76.

Each of the Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently hiring, delegating, training, administering, supervising and performing duties owed individually and/or delegated to them, or failing to hire, delegate, train, administer, supervise or perform their duties owed individually and/or delegated to them directly and proximately causing the asbestos related injuries, illnesses and disabilities of Plaintiff. The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

      a.      in failing to provide adequate safety equipment;

b. in failing to provide Plaintiff from any asbestos exposure;

c. in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

d. In failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products

e. in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff's exposure to asbestos dust;

f. in failing to properly perform safety inspections of the Plaintiff's work place;

g. in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of asbestos at Plaintiff's work sites;

h. in failing to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

i. In failing to properly perform or direct the removal and abatement of asbestos in place at Plaintiff's work sites; and

j. in negligently failing to disclose, warn or reveal medical and safety information to Plaintiff regarding the hazards of asbestos;

k. in failing to properly hire, delegate, train administer and/or supervise employees to be in charge of providing a safe place work;

l. in failing to evaluate the work place;

m. in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge or providing a safe place to work;

n. in failing to properly evaluate the work place;

o. in failing to properly implement control measurer to reduce or eliminate harmful agents in the work place, including asbestos; and

p. in failing to properly train, educate and a/or warn the plaintiff of the dangers of asbestos

77.

The negligence of Plaintiff's employers was a substantial factor and contributed in causing

Plaintiff, Walter Ross, to contract pseudomesotheliomatous adenocarcinoma.

78.

Additionally and alternatively, the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced and torn out by the Employer Defendants were in the care, custody and control of the Employer Defendants, jointly with the premise defendants, were unreasonably dangerous due to the presence of asbestos, and were a proximate cause and cause-in-fact of the Plaintiff's injuries. Therefore, the Employer Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

## LIABILITY OF PREMISE OWNER DEFENDANTS

Petitioner re-alleges and re-asserts all previous allegations and further states:

79.

The **Premises Defendants** owned and/or operated refineries, power plants and/or other facilities where petitioner, **Walter H. Ross, Sr.**, performed specialized duties as an apprentice and/or an insulator unrelated to the business of the Premises Defendants for companies under contract with the Premises Defendants between the years 1954 and 1977.

80.

During this time period while performing his job duties during the normal course and scope of his employment at the **Premises Defendants** facilities, petitioner was exposed to hazardous levels of asbestos dust and/or fiber which caused him to develop asbestos-related disease including, but not limited to asbestosis and asbestos-induced pleural disease.

81.

The **Premises Defendants** knew or should have known of the dangerous condition presented by exposure to asbestos and other toxic substances, and that **Walter H. Ross, Sr.** would suffer from ill health effects including cancer as a result of this exposure, but they failed and/or willfully withheld from Mr. Ross knowledge of the dangers to his health from exposure to asbestos fiber and other toxic substances.

82.

The **Premises Defendants** had the responsibility of providing Mr. Ross with a safe place to work.  However, they negligently failed to carry out this duty and failed to protect Mr. Ross from the dangers of asbestos dust exposure.

83.

In addition to the foregoing acts of negligence, the **Premises Defendants** were and are guilty of the following:

a)     Failing to provide necessary protection to **Walter H. Ross, Sr.**;

b)     Failing to provide clean, respirable air and proper ventilation;

c)     Failing to provide necessary showers and special clothing;

d)     Failing to warn contractors, including **Walter H. Ross, Sr.** of the risks associated with direct and bystander exposure to asbestos;

e)     Other acts which may be revealed at the trial of this matter.

These defendants committed these negligent acts knowing full well that **Walter H. Ross, Sr.** injuries would follow or were substantially certain to follow.

84.

For all times pertinent to this petition, **Walter H. Ross, Sr.** was exposed to and inhaled asbestos fibers that were in the custody and control of the Premises Defendants .

85.

For all times pertinent each exposure of asbestos in the custody and control of the Premises  Defendants, petitioner, **Walter H. Ross, Sr.** suffered injury, the combined result of which was the development of asbestos related diseases including, asbestosis and asbestos-related pleural disease.

86.

As to the Premises Defendants, Petitioner brings specifically a strict liability action pursuant to Louisiana Civil Code Article 2317 for the injury of **Walter H. Ross, Sr.** as a result of his exposure to and inhalation of  asbestos in the custody and control of the Premises Defendants, and each of them.

## NEGLIGENCE AGAINST RESPIRATORY DEFENDANT

Petitioner re-alleges and re-asserts all previous allegations and further states:

87.

Plaintiff used respiratory devices designed, manufactured or distributed by Defendant. Plaintiff would show that the defective condition of such respiratory devices rendered them unreasonably dangerous for use as devices for protection against the inhalation of asbestos dust and fibers. Plaintiff would further show that the respiratory devices were in a defective condition at the time they left the hands of the Defendant.

88.

Defendant was engaged in the business of manufacturing and/or selling respiratory devices, and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of Plaintiff.

89.

Defendant knew that its respiratory devices would be used without inspection for defects and, by placing them on the market, represented that they would safely preclude the inhalation of asbestos fibers.

90.

Plaintiff was unaware of the defects in the Defendant's devices which rendered them ineffective as protection against the inhalation of asbestos dust.

91.

During the periods Plaintiff used and relied upon Defendant's respiratory devices, the devices were utilized in a manner for which they were intended to be used.

92.

The illnesses and disabilities of Plaintiff is a direct and proximate result of Defendant's negligence in placing into the stream of commerce respiratory devices defective in design and inadequate for the purposed for which they were intended, namely preventing the inhalation of dust, including asbestos dust, generated from construction and/or insulation activities.

93.

Defendant knew or should have known that workers would use and rely upon Defendant's respiratory devices at sites where asbestos materials were commonly and extensively used which

created substantial and constant quantities of dust and that Defendant's respiratory devices would provide inadequate protection against the inhalation of asbestos dust.

94.

Further, Defendant was negligent for failing to warn and/or properly instruct workers regarding the inadequacies of its respiratory for preventing the inhalation of asbestos dust.

95.

Petitioner's injuries are cumulative, indivisible injuries for which each Defendant is jointly, severally and in solido liable.

## DAMAGES

96.

As a proximate result of Defendants' fault, Petitioner, **Walter H. Ross, Sr.** incurred and continues to incur medical expenses due to the need to hire, consult and retain physicians to attempt to treat his asbestos-related condition, the amount of which cannot be set forth at this time and he will require further medical treatment in the future thereby incurring expenses which cannot be set forth at this time.

97.

By reason of the facts herein above alleged, Petitioner, **Walter H. Ross, Sr.** suffered and sustained at the hands of the Defendants, the following other damages:

Physical pain and suffering (past and future);

Mental pain and suffering (past and future);

Medical expenses (past and future)

Disability (past and future);

Loss of enjoyment of life (past and future).

WHEREFORE, Petitioner prays for judgment against defendants, **REILLY-BENTON, INC., EAGLE INC., MCCARTY CORPORATION, TAYLOR-SEIDENBACH, INC., OWENS-ILLINOIS, INC., FOSTER WHEELER, LLC, MISSISSIPPI POWER COMPANY, RUST ENGINEERING COMPANY, ROYAL INSURANCE COMPANY, HUNTINGTON INGALLS, INC. LOUISIANA INSURANCE GUARANTY ASSOCIATION, GENERAL ELECTRIC, COMPANY, CBS CORPORATION, FLUOR CORPORATION, HESS CORPORATION, NATIONAL SERVICE INDUSTRIES, INC., ONE BEACON AMERICA INSURANCE**

22

COMPANY, 3-M COMPANY, ENTERGY NEW ORLEANS, INC., SUCCESSOR TO NEW

ORLEANS PUBLIC SERVICE, INC., AND FMC CORPORATION, inclusive, jointly, severally

and in solido, and for interest from the date of judicial demand.

Respectfully Submitted,
**MARTZELL & BICKFORD**

**SCOTT R. BICKFORD (#1165)**
**ROSHAWN H. DONAHUE (#30905)**
338 Lafayette Street
New Orleans, Louisiana  70130
(504) 581-9065
(504) 581-7635  (Fax)

**PLEASE SERVE THE PETITION FOR DAMAGES WITH PLAINTIFFS FIRST SET OF REQUEST FOR PRODUCTION TO:**

**RUST ENGINEERING COMPANY**
Via the Louisiana Long Arm Statue
1001 Fannin
Suite 4000
Houston, Texas 77002

**PLEASE SERVE THE PETITION FOR DAMAGES WITH PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO:**

**MISSISSIPPI POWER COMPANY**
Via the Louisiana Long Arm Statue
2992 West Beach Blvd
Gulfport, MS 39501

**PLEASE SERVE THE PETITION FOR DAMAGES TO:**

**REILLY-BENTON, INC.**
Through its Agent for Service of Process
Thomas L. Cougill
c/o Willingham, Fultz & Cougill, LLP
8550 United Plaza Blvd., Suite 702
Baton Rouge, LA 70809

**EAGLE, INC.**
Through its Agent for Service of Process
Corporation Service Company
320 Somerulos Street
Baton Rouge, Louisiana 70802

**MCCARTY CORP.**
Through its Agent for Service of Process
Paul H. Spaht
445 North Blvd., Suite 300
Baton Rouge, LA 70802

23

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**TAYLOR-SEIDENBACH, INC.**
Through its Agent for Service of Process
Robert I. Shepard
731 South Scott Street
New Orleans, LA 70119

**OWENS-ILLINOIS, INC**
Via the Louisiana Long Arm Statue
One Michael Owens Way
Perryburg, OH 43351

**FOSTER WHEELER, LLC**
Through its agent for Service of Process
CT Corporation System
Suite 400B
Baton Rouge, La 70808

**ENTERGY NEW ORLEANS, INC.**
Through its Agent for Service of Process
Marcus V. Brown
639 Loyola Avenue
26th Floor
New Orleans, LA 70113

**HUNTINGTON INGALLS, INC.**
Through its Agent for Service of Process
CT Corporation System
5615 Corporate Blvd., Suite 400B
Baton Rouge, Louisiana 70808

**CBS CORPORATION**
Via the Louisiana Long Arm Statue
51 West 52nd Street
New York, NY 10019

**GENERAL ELECTRIC COMPANY**
Through its Agent for Service of Process
CT Corporation System
5615 Corporate Blvd., Suite 400B
Baton Rouge, Louisiana 70808

**HESS CORPORATION**
Through its Agent for Service of Process
CT Corporation System
5615 Corporate Blvd., Suite 400B
Baton Rouge, LA 70808

**ONE BEACON AMERICA INSURANCE COMPANY**
Through its Agent for Service of Process
Secretary of State
State of Louisiana
8585 Archives Avenue
Baton Rouge, Louisiana 70809

**3-M COMPANY**
Through its Agent for Service of Process
CT Corporation System
5615 Corporate Blvd., Suite 400B
Baton Rouge, LA 70808

**NATIONAL SERVICE INDUSTRIES, INC.**
Via the Louisiana Long Arm Statue
4111 Pleasentdale Road
Doraville, GA 30340

**FLUOR CORPORATION**
Via the Louisiana Long Arm Statute
2500 South Atlantic Blvd
Los Angeles, CA 90040


**FMC CORPORATION**
Through its Agent for Service of Process
CT Corporation System
5615 Corporate Blvd., Suite 400B
Baton Rouge, Louisiana 70808

**THE ROYAL INSURANCE COMPANY**
Through its Agent for Service of Process
Secretary of State
State of Louisiana
8585 Archives Avenue
Baton Rouge, Louisiana 70809

**LOUISIANA INSURANCE GUARANTY ASSOCIATION**
Through its Agent for Service of Process
Secretary of State
State of Louisiana
8585 Archives Avenue
Baton Rouge, Louisiana 70809


G:\Clients\ROSS.WALTER\Ross, Walter Matter 2\Pleadings\PETITION FOR DAMAGES.wpd