UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WALTER H. ROSS, SR., ET AL | CIVIL ACTION |
| VERSUS | NO. 14-1161 |
| REILLY BENTON, INC., ET AL | SECTION "N"  (2) |

## ORDER AND REASONS

Before the Court is plaintiff's Motion to Remand **(Rec. Doc. 8)**.  The removing defendant has filed a response (Rec. Doc. 32).  Plaintiffs have filed a reply (Rec. Doc. 37), and the removing defendant has filed a sur-reply (Rec. Doc. 42).

Plaintiff Walter Ross suffers from pseudomesotheliomatous adenocarcinoma, which he alleges was caused by his occupational exposure to asbestos in his work as an insulator.  Rec. Doc. 1-1.  He brought suit in the Civil District Court, Parish of Orleans, against several defendants, including alleged manufacturers and suppliers of asbestos products, as well as his former employers.  *Id.*  One of the employer defendants, Rust Engineering & Construction, Inc. ("Rust"), filed a notice of removal in this Court, seeking to remove pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a).  Rec. Doc. 1.  The plaintiff has moved to remand. Rec. Doc. 8.

The purpose of the federal officer removal statute has always been "to provide a federal forum for officers whose duties under federal law conflict with state law." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (citing *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)).

"The statute evinces concern that 'unfriendly' states will impose state-law liability on federal officers and their agents for actions 'done under the immediate direction of the national government.' " *Id*. (quoting *Tennessee v. Davis*, 100 U.S. 257, 263, 25 L.Ed. 648 (1879)). The statute provides, in relevant part:

> (a)  A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office....

28 U.S.C. § 1442(a)(1).  "Unlike the general removal statute, which must be 'strictly construed in favor of remand,' the federal officer removal provision's broad language must be liberally interpreted."  *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524 (2011)  (internal citation omitted).  "Also unlike the general removal provision, there is no requirement in the federal officer removal provision that the district court have original jurisdiction over the plaintiff's claim." *Id.*; *see Willingham*, 395 U.S. at 406.   It is the federal officer removal statute itself that creates the federal jurisdiction.  *Ruppel*, 701 F.3d at 1180.

It is the defendant who bears the burden of establishing this basis for federal jurisdiction. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999).  Where the defendant invoking section 1442(a) is a government contractor, the Fifth Circuit has adopted a three-part test for determining whether such contractor qualifies as a "person acting under [a federal] officer" who is sued for an "act under color of such office."  28

U.S.C. § 1442(a).  The contractor must prove that:  (1) it is a "person" within the meaning of the statute; (2) it "acted pursuant to a federal officer's directions and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims;" and (3) it has asserted a "colorable federal defense."  *Winters*, 149 F.3d at 398-400.

A.    **First Factor:   The Contractor is a Person**

There is no argument with respect to the first factor.  Rust is a corporate entity, which qualifies as a "person" within the meaning of the statute.  *See Winters*, 149 F.3d at 398.

B.    **Second Factor:  Action Pursuant to Federal Officer's Direction and Causal Nexus**

"The second factor necessary for § 1442 removal is a finding that the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims."  *Winters*, 149 F.3d at 398.  As the Fifth Circuit and Supreme Court have admonished, this " 'color of federal office' requirement is neither 'limited' nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying rationale."  *Id.*  "On the other hand, the [Supreme] Court has clarified that the right to removal is not unbounded, and only arises when 'a federal interest in the matter' exists." *Id.* (quoting *Willingham*, 395 U.S. at 406).

The plaintiff alleges that from 1963 to 1975, he worked for Rust at the NASA Michoud Assembly Facility in New Orleans.  Rec. Doc. 1-1 at ¶ 31.  He alleges that he was exposed to asbestos from installing and removing heat insulation, boiler insulation, insulation pads, boiler lagging, boiler jackets, and other asbestos insulation on the boilers, turbines, and piping systems.  *Id.* at ¶¶ 34-35.  He alleges that until the early 1970s, he was not told of the hazards associated

with asbestos or told that he should wear protective equipment and clothing.  *Id.* at ¶ 36.

Rust asserts that it is entitled to federal officer removal because it performed its maintenance and repair work at the Michoud facility pursuant to a contract with the National Aeronautics and Space Administration ("NASA"), dated December 29, 1961 (Rec. Doc. 32-1). It contends that its use of any asbestos materials was done in accordance with the contract and "under the direction of NASA."  Rec. Doc. 32 at 4.   However, Rust fails to point a single instance, either in the contract itself or otherwise, where NASA required or directed the use of asbestos or asbestos-containing materials in connection with Rust's work on heat insulation, boiler insulation, insulation pads, boiler lagging, boiler jackets, and/or other asbestos insulation on the boilers, turbines, and piping systems.[1]  This fact distinguishes the instant case from the shipyard cases cited by Rust.  *See, e.g., Legendre v. Anco Insulations, Inc.,* 2012 WL 2064537 *3 (M.D. La.), *magistrate report & recommendation adopted*, 2012 WL 2064533 (M.D. La. 2012).  In the shipyard cases, the defendants have produced evidence that the United States Navy, through contractual and federal regulatory provisions, specifically required the use of asbestos-containing materials.  *Legendre*, 2012 WL 2064537 *3 (ships "were constructed under contracts that incorporated by reference federal law, regulations and specifications which

---

[1] Indeed, the only instance cited by Rust wherein NASA specified the use of an asbestos-containing product was its requirement that asbestos floor tiles be used in the renovation of a cafeteria, which was scheduled for completion on October 15, 1962, more than a year before the plaintiff commenced work at the facility.  Rec. Doc. 32-1 at 77 of 78.  As the plaintiff's claims relate solely to his work with insulation, no causal nexus exists between the plaintiff's claims and this isolated specification for asbestos floor tiles.

mandated the use of asbestos-containing materials in the construction of the vessels").[2]   Thus, in the shipyard cases, analysis of the second *Winters* factor often turns upon the precise nature of the plaintiff's claims.  Strict liability and design claims generally have been found to be causally connected to the Navy specifications requiring use of asbestos, whereas negligent supervision and failure-to-warn claims generally (though not always) have not.[3]   Here, in contrast, Rust has pointed to *no* evidence demonstrating that its use of asbestos was done "pursuant to a federal officer's directions."  *Winters*, 149 F.3d at 398.   Instead, Rust urges the Court to follow *Lalonde v. Delta Field Erection*,[4] a case out of the Middle District of Louisiana, wherein Magistrate Judge Dalby held that the causal nexus requirement is satisfied so long as "the defendant

---

[2]  *See also, e.g., Comardelle v. Pennsylvania General Ins. Co.*, 2014 WL 1117969 (E.D. La. 2014) ("[m]ilitary specifications affirmatively required the use of asbestos-containing thermal insulation"); *Najolia v. Northrop Grumman Ship Systems, Inc*., 883 F. Supp. 2d 646, 653 (E.D. La. 2012) ("Defendants have submitted evidence indicating that the Navy imposed specific obligations upon them to use asbestos in the manufacture of products pursuant to military contracts"); *Dupre v. Todd Shipyards Corp*.,2011 WL 4551439 *6 (E.D. La. 2011) ("Navy had exclusive control over the selection of insulation materials, and that they required that asbestos components be used on their ships.").

[3]  *See, e.g., Legendre*, 2012 WL 2064537 *3 (causal nexus met where strict liability claims rests on mere presence of asbestos on the site and presence of asbestos was required by the contract as well as federal law and regulations); *Najolia*, 883 F. Supp. 2d at 656 (finding removal proper because "even if the failure-to-warn claim does not provide independent grounds for removal...the 'acting under' prong is satisfied as to the design-defect claim" and defendant offered evidence that "Navy did not permit asbestos warning labels to be affixed to many of the products at issue"); *Grainer v. Northrop Grumman Ship Systems, Inc.*, 2008 WL 5216213 *3 (E.D. La. 2008) (remanding where plaintiff's claims were "not merely based on the simple fact that the Defendants used asbestos, but rather on the allegation that, while incorporating asbestos into their operations, the Defendants negligently failed to take the proper safety precautions"); *Sheppard v. Northrop Grumman Systems Corp*., 2007 WL 1550992 (E.D. La. 2007) (remanding where plaintiff voluntarily dismissed his strict liability claims, the record failed to show "that the safety procedures at issue were controlled by the government or related to government specifications," and "nothing in the federal regulations prevented Avondale from warning its employees of the dangers of asbestos exposure").

[4]  1998 WL 34301466 (M.D. La. Aug. 6, 1998).

committed the alleged act or omission while performing its federal duties," regardless of whether the alleged act or omission is causally connected to a federal directive. 1998 WL 34301466 at *4. This is directly contrary to the Fifth Circuit's holding in *Winters* (decided a few days after *Lalonde*), requiring "a finding that the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims." *Winters*, 149 F.3d at 398 (emphasis added). The Fifth Circuit did not assume that the "color of office" requirement was satisfied merely because the defendants committed the alleged wrongs while performing duties pursuant to their federal contracts. To the contrary, the *Winters* court stated: "The question we must determine is whether the government specified the composition of Agent Orange so as to supply the causal nexus between the federal officer's directions and the plaintiff's claims." *Id.* (emphasis added). For this reason, the judges of the Eastern District of Louisiana have consistently declined to follow *Lalonde*. *See, e.g., Hampton v. Owens-Illinois,* 2007 WL 274794 *2 & n.12 (E.D. La. 2007) (Africk, J.); *Joseph v. Fluor Corp.,* 513 F. Supp. 2d 664, 671-72 & n.9 (E.D. La. 2007) (Fallon, J.). This Court joins them in doing so.

  Unable to point to any NASA specification regarding asbestos, Rust asserts conclusorily that "NASA specifically controlled safety and all other aspects of Rust's work at Michoud." Rec. Doc. 32 at 8. Regarding safety, the contract required that Rust comply with specified general safety standards (*e.g.*, ASA safety standards, National Fire Protection Association Handbook of Fire Protection) and take such additional measures as the Contracting Officer "may determine to be reasonably necessary." Rec. Doc. at 10 of 70. How these standards might relate to asbestos the Court can only guess, for Rust fails to demonstrate or even point out a single connection

between any safety standard imposed by the contract and the claims herein.  Nor has Rust offered evidence of a single instance in which the Contracting Officer imposed a safety measure that related to asbestos or effectively required the use of asbestos.  Although the "color of office" requirement is construed broadly, it is the defendant's burden to demonstrate that it is met, and Rust has failed to make even a minimal showing.

   Rust's oblique suggestion that NASA controlled "all other aspects" of Rust's work is belied by the contract itself, which gives Rust vast and broad responsibilities with only very general specifications as to how those duties are to be carried out.  *See, e.g.,* Rec. Doc. 37-1 at 3 of 3 ("The Contractor shall operate a supply service encompassing complete responsibility for the acquisition, custody, care, and safekeeping of supplies and materials required in support of Contractor's operations only...."); Rec. Doc. 32-1 at 62-63 of 78 ("The Contractor shall perform the following plant maintenance, repair, and operations as set forth below: * * *  9. Install and/or maintain and repair insulation on hot and cold water lines, steam lines, air ducts..., hot water tanks, boilers, and other items requiring insulation.").  Rust argues that despite being vested with "complete responsibility" for acquiring its own supplies, it remained subject to NASA supply regulations.  Rec. Doc. 42 at 2; *see* Rec. Doc. 32-1 at 53 of 78 at ¶ A(1) and Rec. Doc. 37-1 at 3 of 3.  However, Rust fails to demonstrate (or even argue) that any NASA supply regulation required the use of asbestos insulation.

   Finally, Rust argues that the "color of office" requirement is met by virtue of the fact that Rust performed its contractual duties at a government-owned facility, rather than at a privately-owned one.  *See* Rec. Doc. 32 at 8.  However, other than *Lalonde*, *supra,* Rust cites no authority

for this proposition, and this Court can find none.[5]

## C. Third Factor: Contractor Has Asserted a "Colorable Federal Defense"

"The third and final factor necessary for removal pursuant to § 1442 is the assertion of a 'colorable federal defense.' " *Winters*, 149 F.3d at 400 (quoting *Willingham*, 395 U.S. at 406-07). In this case, Rust has raised the government contractor defense. *See* Rec. Doc. 1 at 4. The test for immunity under this defense is met where: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Winters*, 149 F.3d at 400 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). The defendant "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." *Id.* Rust fails to do even this. Although Rust states in its notice of removal that its federal defense is the government contractor defense, it fails to make a single argument in either its notice or its memoranda to support this assertion. Nowhere does it analyze the requirements of this defense or state what facts in this case make out a colorable basis for application of the defense.

Therefore, Rust having failed to establish either the second or third factors necessary for federal contractors to remove pursuant to 28 U.S.C. § 1442(a)(1), the Court finds the removal to have been improper. Accordingly;

---

[5] The Court notes that Rust does not assert federal enclave jurisdiction as a basis for removal. *See Wood v. American Crescent Elevator Corp.,* 2011 WL 1870218 (E.D. La. 2011) (finding that the NASA Michoud Assembly Facility is not a federal enclave).

**IT IS ORDERED** that plaintiff's Motion to Remand (**Rec. Doc. 8**) is **GRANTED**, and this matter is hereby **REMANDED** to the Civil District Court for the Parish of Orleans.

New Orleans, Louisiana, this 15th day of July, 2014.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**